UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: | § § § § § § § | Chapter 11<br><br>Case No. 13-11666 (ELF)<br><br>[Re: Docket No. 3] |
| IN THE PLAY, INC., | | |
| Debtor. | | |

Hearing Date: August 8 and 9, 2013, at 9:00 a.m. (EST)
Debtor's Response Deadline: June 17, 2013

**MAXX HOLDINGS, INC.'S AND SPORTS EQUITY FUND 2, LLC'S (I) MOTION TO CONVERT CASE TO CHAPTER 7 AND (II) SUPPLEMENT TO THE MOTION FOR AN ORDER DIRECTING THE APPOINTMENT OF A CHAPTER 11 TRUSTEE PURSUANT TO 11 U.S.C. §§ 1104(a)(1) AND 1104(a)(2)**

Maxx Holdings, Inc. ("Maxx") and Sports Equity Fund 2, LLC ("SEF2") (collectively, the "Secured Lenders"), secured creditors of debtor In the Play, Inc. ("ITP" or the "Debtor") hereby file (i) a motion to convert the Debtor's chapter 11 case to a case under chapter 7 of the Bankruptcy Code (the "Conversion Motion"), and (ii) a supplement to the motion pursuant to 11 U.S.C. §§ 1104(a)(1) and 1104(a)(2) and Rule 2007 of the Federal Rules of Bankruptcy Procedure for an order appointing an operating chapter 11 trustee for the Debtor (the "Supplemental Trustee Motion").  In support hereof, the Secured Lenders respectfully state as follows:

**PRELIMINARY STATEMENT**

1. Facts discovered subsequent to the Original Trustee Motion (as defined below) and evidence at the Involuntary Petition Trial (as defined below), show that ample cause exists to convert this case to a case under chapter 7 of the Bankruptcy Code.  The Debtor has no operations, no employees and no means to generate revenue until possibly some unknown point

4847-1743-3364\4

in the future. The Debtor's agreements with TSE have made it so the only parties that are benefiting from such agreements are Mr. Aman, the Debtor's former employees now hired by TSE, and TSE itself. As a result, the Debtor does not have the liquidity to pay for current expenses, let alone sustain future expenses. This case now belongs in chapter 7 because there is no viable business to reorganize or an advantage to liquidating under Chapter 11. Cause further exists because the Debtor violated the 363 Order when it entered into unauthorized insider loans with Smartek.

2. In the event the Court declines to grant the Conversion Motion, ample cause exists, as set forth in detail below, and along with the Original Trustee Motion and the Declarations,[1] for the Court to order the appointment of a chapter 11 trustee under 11 U.S.C. § 1104(a)(1). Such appointment is also in the best interests of creditors and the estate pursuant to 11 U.S.C. § 1104(a)(2).

## JURISDICTION AND VENUE

3. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

4. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## PROCEDURAL BACKGROUND

5. On February 27, 2013, these proceedings were commenced by the filing of an involuntary petition under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") against ITP.

---

[1] In support of the Original Trustee Motion(as defined herein), the Secured Lenders submitted and relied on (i) the *Declaration of Lawrence Rabie in Support of Emergency Motion of Maxx Holdings, Inc. and Sports Equity Fund 2, LLC for an Order Directing the Appointment of a Chapter 11 Trustee Pursuant to 11 U.S.C. § 1104(a)(1) and 1104(a)(2)* (the "Rabie Declaration") (Docket No. 5); and (ii) the *Declaration of Peter LeBoutillier in Support of Emergency Motion of Maxx Holdings, Inc. and Sports Equity Fund 2, LLC for an Order Directing the Appointment of a Chapter 11 Trustee Pursuant to 11 U.S.C. § 1104(a)(1) and 1104(a)(2)* (the "LeBoutillier Declaration" and together with the Rabie Declaration, the "Declarations") (Docket No. 4).

6.     On March 1, 2013, the Secured Lenders filed their original motion pursuant to 11 U.S.C. §§ 1104(a)(1) and 1104(a)(2) and Rule 2007 of the Federal Rules of Bankruptcy Procedure for an order appointing an operating chapter 11 trustee for the Debtor [Docket No. 3] (the "Original Trustee Motion," and together with the Supplemental Trustee Motion, the "Trustee Motion").

7.     On March 6, 2013, the Court entered an order requiring the Debtor to maintain the status quo and operate pursuant to 11 U.S.C. § 363 [Docket No. 15] (the "363 Order").  The Court set April 5 and 8, 2013 as the hearing on the involuntary petition and the Original Trustee Motion (the "Involuntary Petition Trial").  Subsequently, the hearing on the Original Trustee Motion was continued to a date to be determined.

8.     On April 3, 2013, a consortium of 15 unsecured creditors (the "Consortium of Creditors," and together with the Petitioning Creditors and Secured Lenders, the "Petitioning Parties") of the Debtor formally joined in support of the Involuntary Petition and Original Trustee Motion [D.I. 34] (the "Joinder").

9.     The Court held the Involuntary Petition Trial as scheduled, and on May 10, 2013, the Court entered an order for relief placing the Debtor into chapter 11 [Docket No. 62].

10.    On May 29, 2013, the Court held a pre-trial scheduling conference and entered an order dated setting August 8 and 9, 2013, beginning at 9:00 a.m. as the hearing date for instant Conversion Motion and the Trustee Motion [Docket No. 82] (the "August Hearing").

## STATEMENT OF FACTS

A.  **Facts in Support of Conversion Motion**

11.    The following undisputed facts were entered into evidence at the Involuntary Petition Trial and provide cause for granting the Conversion Motion:

12.    Beginning in at least March 2012, the Debtor was out of money, insolvent and/or

unable to pay its debts, including employees.  (See Exs. 19; 21; 22; 43).  From October 5, 2012, until the present, the Debtor was completely insolvent with no hopes of raising any funds in the future.  (Exs. 24; 25; 29; 39; 60; Tr. 4/8/13, p. 44:21).

13. The revenue generated by the Debtor's three installed systems is insufficient for the debtor to pay its debts as they become due. (Tr. 4/8/13, p. 10:14-19).

14. Mr. Aman is the "unemployed CEO/caretaker" of the Debtor.  The Debtor does not have any operations or employees.  All marketing and development of the Debtor's IP and product is being performed by TSE and the TSE employees who were formerly employed by the Debtor.  Mr. Aman testified that even with the TSE agreements the Debtor did not have any new customer contracts or any new source of funding.  (Tr. 4/8/13, pp. 92:5-22).

15. The evidence also shows that Mr. Aman's "hope" of future revenues to pay creditors won't occur until sometime far down the road.  (Tr. 4/8/13, pp. 93:16-94:3; Ex. 5, p.5 (referencing Debtor's proposed 5 year payment plan commencing after 50 product installations)).

16. In response to questions about the Debtor's plans for the future, Mr. Aman testified, "[n]o one will receive any money out of this, in my personal estimation, unless some new arrangement is made to take the company forward."  (Tr. 4/8/13, p. 98:16-99:15).

17. In March 2013, the Debtor obtained undocumented loans from Smartek.  (Tr. 4/8/2013, p. 61:6-18).  Thus, after the filing of the involuntary petition, the Debtor engaged in insider transactions and violated a Court order.

18. During the hearing on March 10, 2013, counsel for the Secured Lenders informed the parties that the only two options they were proposing were the appointment of a Chapter 11 trustee or conversion to Chapter 7.  Additionally, the Secured Lenders will not consent to having their secured interests primed by any entity providing debtor-in-possession financing or consent

to a plan that included Mr. Aman.

B.     **Facts in Support of Appointment of Chapter 11 Trustee**

19.    In addition to the facts set forth in the Original Trustee Motion and the foregoing facts in support of the Conversion Motion which substantially overlap, the following are undisputed facts either entered into evidence at the Involuntary Petition Hearing, or that will be introduced at a hearing on the Trustee Motion.

20.    Mr. Aman has a pattern of ignoring corporate formalities and engaging in insider transactions.  For example, $25,000 of the funds received from the sale of a site license to TSE was deposited into Smartek's bank account – Smartek is wholly owned by Mr. Aman and not affiliated with the Debtor except as a sometimes vendor.  (Tr. 4/8/13, pp. 48:9-17; 57:10-21; 89:8-25; 94:17-95:16).  Mr. Aman had a history of paying Smartek bills with funds from the Debtor, or paying obligations of the Debtor with funds from Smartek and then transferring funds from the Debtor to Smartek.  (Tr. 4/8/13, pp. 82-85).

21.    Funds from the sale of the developer and site license agreements were used to pay the Debtor's counsel and to pay debts owed to companies that Mr. Amen either wholly owns or is a part owner – i.e., Smartek and Industrial Vision Systems.  (Ex. 23; Tr. 4/8/13, p. 57:10-21; 58:24-59:12; 88:17-25-89:1-7).

22.    The evidence does not show what happened to the $11,500 balance of the $25,000 in from the site license sale deposited into Smartek's account.

23.    If not already in evidence, the Secured Lenders will introduce evidence that the insider transfers with Smartek were not contemporaneously documented with invoices or other documentation.  In addition, Mr. Aman continued this practice after being told to stop by Richard Adler, the Debtor's then CEO, and Platform Management, the Debtor's then financial advisors, in July 2012.

4847-1743-3364\4

24. A significant percentage of the Debtor's creditors have joined in the Trustee Motion, evidencing a lack of faith in Mr. Aman to act in the best interest of creditors.

25. The evidence already proves that beginning in at least September 2013, the Debtor was not only in the zone of insolvency but was insolvent. The Secured Lenders will show at the August Hearing that Mr. Aman breached his fiduciary duties to the Debtor's creditors and acted to protect his interests as the largest shareholder of the Debtor, all to the detriment of creditors. Specifically, Mr. Aman acted with intent to protect the assets of the Debtor from the Debtor's creditors, included the Secured Lenders, whom Mr. Aman accused of trying to take the Debtor's IP away from him. These actions include the plan outlined in Mr. Aman's February 6, 2013 letter, and the subsequent agreements with TSE whereby Mr. Aman eviscerated the Debtor's ability to develop and market its product.

26. The evidence is overwhelming that Mr. Aman is not impartial and there is no clear boundary between TSE, Mr. Aman and the Debtor. The Secured Lenders will show at the August Hearing that in early February, Mr. Aman, John Brostrom, the CEO of TSE, and Rich Ruben, a member of the Debtor's advisory team, met to discuss the Debtor's business. At that meeting, Mr. Aman and Mr. Brostrom discussed how unhappy all the Debtor's creditors were, and that the creditors had discussed restructuring options, including bankruptcy for the Debtor. This was during the time period that, as discussed above, Mr. Aman negotiated the agreements with TSE to the detriment of creditors of the Debtor. These actions were also contemporaneous and/or fulfilled Mr. Aman's threats in the February 6, 2013 letter to create a new business venture with his new partners-TSE.

27. Mr. Aman is now employed by TSE. All of the Debtor's former employees, who were laid off in October 2012, are now employed by TSE, even though the secured and

unsecured creditors provided a plan to Mr. Aman which included investment that would fund payroll and keep the employees employed with the Debtor.  TSE is now using the Debtor's offices as workspace for Mr. Aman and these new TSE employees to work for TSE's benefit.  TSE's current counsel had acted as counsel to the Debtor in January and February 2013.  TSE participated in arguments for the Debtor during the Involuntary Petition Trial, and even went so far as to pay in full debts owed to two of the Debtor's trade creditors.

28. TSE now has full access to the Debtor's proprietary computer code, which is the most valuable component of the Secured Lenders' collateral.  TSE's access to the code is resulting in continued diminishment of the value of the Debtors IP, which has a negative effect on not only the Secured Lenders, but all creditors of the Debtor.

29. Subsequent to entering into the agreements with TSE and after entry of the 363 Order, Mr. Aman accompanied Mr. Brostrom to Orlando to meet with a company called Photon X.  TSE and Photon X have now signed an agreement for the rights to cameras developed by Photon X.  Mr. Aman had intended for the Debtor to obtain a right to the Photon X cameras, so in arranging this meeting, Mr. Aman acted in the interests of TSE and not the Debtor.

30. Mr. Aman and TSE are now attending trade conferences and meeting with clients (many of whom had been meeting with the Debtor prior to TSE's involvement) in order to market and sell the Debtor's product as enhanced by TSE, all for the benefit of TSE and Mr. Aman.

31. The forgoing provide ample factual support and evidence to warrant the appointment of a chapter 11 trustee under 11 U.S.C. § 1104 to manage the Debtor during chapter 11.

## ARGUMENT

A. **Section 1112(b) Requires Conversion upon Substantial or Continuing Loss and Absence Of A Reasonable Likelihood of Rehabilitation and/or Where a Debtor Fails to Comply with and Order of the Court**

32.  Section 1112(b) of the Bankruptcy Code provides that upon request of a party in interest, and absent "unusual circumstances," a court shall convert a Chapter 11 case to a Chapter 7 case, for cause. 11 U.S.C. § 1112(b)(1). *See In re Gateway Access Solutions, Inc*. 374 B.R. 556, 560 (Bankr. M.D. Pa. 2007) (noting the statutory language change from "permissive to mandatory" and finding cause existed to convert the debtor's cases where the estate was diminishing rapidly at the expense of creditors due to rapidly accumulating administrative costs and professional fees).

33.  Section 1112(b)(4) lists non-exclusive grounds for conversion, including "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation" and "a debtor's failure to comply with an order of the court." 11 U.S.C. § 1112(b)(4)(E). 11 U.S.C. § 1112(b)(4)(A) and (E). *See In re AdBrite Corp*., 290 B.R. 209, 215 (Bankr. S.D.N.Y. 2003) (cause existed to convert the Chapter 11 cases in part because of the debtor's negative postpetition cash flow and inability to pay current expenses); *In re 3868-70 White Plains Road, Inc*., 28 B.R. 515, 519 (Bankr. S.D.N.Y. 1983) (cause existed to convert where the debtor's assets were fully collateralized and it had negative cash flow and an inability to pay current expenses).

34.  The first prong of Section 1112(b)(4)(A) requires a showing of a "substantial or continuing loss to or diminution of the estate". As noted in *Collier*, "If the estate has sustained a substantial loss following the commencement of the case, or the debtor is operating with a sustained negative cash flow after the commencement of the case, these facts are sufficient to

justify a finding of 'substantial or continuing loss to ... the estate'". *See* 7 Alan N. Resnick & Henry J. Sommer, *Collier on Bankruptcy*, ¶ 1112.04[5][a] at 1112-34 (15th ed. rev'd 2008).

35. The second prong of Section 1112(b)(4)(A) requires an "absence of a reasonable likelihood of rehabilitation". As noted in Collier, "the standard under section 1112(b)(4)(A) is not the technical one of whether the debtor can confirm a plan, but, rather, *whether the debtor's business prospects justify continuance of the reorganization effort*". See Collier, 1112.04[5][a] at 1112-36 (15th ed. rev'd 2008) (emphasis added). *See also Quarles v. United States Trustee*, 194 B.R. 94, 97 (W.D. Va. 1996) (no likelihood of rehabilitation where debtor was losing money and only hope of reorganization depended on speculative outcomes in pending litigation); *In re Great Am. Pyramid J.V.*, 144 B.R. 780, 792 (Bankr. W.D. Tenn. 1992) ("A reorganization plan under chapter 11 must be more than a nebulous speculative venture and must have a realistic chance of success which would lead to rehabilitation, and if outside financing is needed, it must be clearly in sight".) (emphasis in original); *In re Imperial Heights Apartments, Ltd.*, 18 B.R. 858, 863-864 (Bankr. S.D. Ohio 1982) (no "reasonable likelihood of rehabilitation" where debtor's only asset was a potential lawsuit).

36. "Rehabilitation" as used in section 1112(b)(4)(A) is not synonymous with "reorganization". Instead, "Rehabilitation signifies that the debtor will be reestablished on a sound financial basis, which implies establishing a cash flow from which current obligations can be met". *In re Rundlett*, 136 B.R. 376, 380 (Bankr. S.D.N.Y. 1992) (granting creditors' motion to convert Chapter 11 case to Chapter 7 where debtor's use of estate property resulted in continuing loss or diminution of the estate, there was not a reasonable likelihood of rehabilitation and the debtor would be unable to effectuate a plan) (*citing In re Kanterman*, 88 B.R. 26, 29

(S.D.N.Y. 1988)) (affirming conversion of Chapter 11 case to Chapter 7 upon creditors' showing continuing diminution to the estate and absence of reasonable likelihood of rehabilitation).

37. A debtor "should not continue in control of its business beyond a point at which reorganization no longer remains realistic," if creditor recoveries are eroding. *In re AdBrite Com.*, 290 B.R. at 215; *In re Johnston*, 149 B.R. 158, 161 (B.A.P. 9th Cir. 1992) (granting motion to convert debtor's Chapter 11 case to Chapter 7 where the debtor lacked the ability to effectuate plan of reorganization because it had no income and further delay would prejudice creditors by eroding their position).

### 1) **The Debtor Has Suffered Substantial and Continuing Losses and Has No Reasonable Prospect of Rehabilitation**

38. In the present case, the Debtor does not have any cash flow and continues to incur operating costs that is has no hope of paying. The Debtor has been insolvent since at least October 5, 2012. (Exs. 24; 25; 29; 39; 60; Tr. 4/8/13, p. 44:21). The revenue generated by the Debtor's three installed systems is insufficient for the Debtor to pay its debts as they become due. (Tr. 4/8/13, p. 10:14-19).

39. As a result of Mr. Aman's pre-petition actions, including the agreements with TSE, the Debtor has no operations, no employees and no means to generate revenue until possibly some unknown point in the future. (Tr. 4/8/13, pp. 93:16-94:3; Ex. 5, p.5 (referencing Debtor's proposed 5 year payment plan commencing after 50 product installations)). Mr. Aman testified that even with the TSE agreements the Debtor did not have any new customer contracts or any new source of funding. (Tr. 4/8/13, pp. 92:5-22). The Debtor's agreements with TSE have made it so the only parties that are benefiting from such agreements are Mr. Aman, the Debtor's former employees now hired by TSE and TSE itself.

40. In response to questions about the Debtor's plans for the future, Mr. Aman

testified, "[n]o one will receive any money out of this, in my personal estimation, unless some new arrangement is made to take the company forward." (Tr. 4/8/13, p. 98:16-99:15).  Mr. Aman thus admitted that the Debtor does not have the means to attempt to sell, reorganize the business or otherwise rehabilitate the Debtor absent debtor-in-possession financing.  At the time of filing the instant motion, the Debtor has indicated it had some talks about obtaining debtor-in-possession financing from TSE, but otherwise has not provided any concrete plans to obtain such funding.

41. The Secured Lenders have offered to fund the reasonable expenses necessary to preserve the Secured Lenders' collateral and an auction of the Debtor's assets.  The Secured Lenders, however, are not willing to provide debtor in possession funding that would allow the Debtor to propose a reorganization plan that involves Mr. Aman or would allow Mr. Aman, through the Debtor, to continue his fight with the Secured Lenders.  The Secured Lenders further would not agree to debtor in possession funding from a third party that attempts to prime their security interests.  The Debtor also cannot provide the Secured Lenders with any acceptable form of adequate protection because of the negative cash flow and lack of assets no otherwise encumbered by the Secured Lenders' liens.

42. Pursuant to the applicable case law cited above, cause exists under both prongs of Section 1112(b)(4)(A) and conversion of this case to a Chapter 7 case because there is no viable business to reorganize or an advantage to liquidating under Chapter 11 and thus no hope of rehabilitation exists.  Liquidation of the Debtor's assets can be done more cheaply and efficiently by a Chapter 7 trustee than by the Debtor and Chapter 11 professionals.

### 2) **The Debtor Failed to Comply With an Order Of the Court**

43. Section 1112(b)(4)(E) includes as cause for conversion, "a debtor's failure to comply with an order of the court." 11 U.S.C. § 1112(b)(4)(E).  On March 6, 2013, the Court

entered the 363 Order which required the Debtor comply with Section 363 of the Bankruptcy Code. Both Mr. Aman, the Debtor's CEO, and the Debtor's current counsel were in attendance at the March 6 hearing and agreed to the terms of the 363 Order.

44. Despite agreeing to be bound by the terms of the 363 Order, on March 14, the Debtor received a $3,500 transfer from Smartek, and on March 20, the Debtor received another $3,000 transfer from Smartek. (Tr. 4/8/13, pp. 61:19-62:1).[2] Mr. Aman testified that these March 2013 transfers from Smartek were undocumented loans negotiated by himself as the principal of the Debtor and the principal of Smartek. (Tr. 4/8/13, p. 61:1-18). Thus, after entry of the 363 Order, the Debtor engaged in insider transactions, entered into non-ordinary course insider loans with Smartek, and thus violated the 363 Order. In addition, after entry of the 363 Order, Mr. Aman facilitated the contract between TSE and Photon X, thereby depriving the Debtor not only from the benefits of an agreement that would have provided value to the estate, but also depriving the Debtor from one of its biggest sales pitches to potential investors and customers.

45. Pursuant to Section 1112(b), the Debtor's violation of the 363 Order amounts to cause which requires the Court to convert the case to a case under Chapter 7.

B. **In the Event the Court Does Not Convert the Case to a Case Under Chapter 7, The Court Should Order the Appointment Of A Trustee Pursuant to Section 1104 of the Bankruptcy Code**

46. Section 1112(b) provides that even if a bankruptcy court finds cause to convert a case from Chapter 11 to Chapter 7, the Court may instead appoint a Chapter 11 trustee if it "is in the best interests of creditors and the estate." 11 U.S.C. § 1112(b). In the event the Court

---

[2] At the same time Mr. Aman was engaging in these unauthorized loans, the Secured Lenders had offered to provide the Debtor with a loan, subject to court approval, to pay the patent fees and other costs associated with preserving the Secured Lenders' collateral. The Debtor did not respond to the offer.

4847-1743-3364\4

declines to grant the Conversion Motion, the Secured Lenders request that the Court grant the Trustee Motion because cause exists under Section 1104(a)(1) and/or it is in the best interests of creditors and the estate under Section 1104(a)(2) and Section 1112(b).

47. In the Original Trustee Motion, the Secured Lenders provided the legal analysis regarding cause under Section 1104(a)(1) and (2). This Supplemental Trustee Motion incorporates by reference such legal analysis and supplements the legal analysis and facts in the Original Trustee Motion as follows.

48. Mr. Aman's pattern of pre and post-petition conduct with respect to Smartek, his pattern of ignoring corporate formalities, failure to maintain adequate books and records, and engaging in insider transactions, which are not likely to change post-petition, provide cause to appoint a chapter 11 trustee. *In re Hotel Associates, Inc.*, 3 B.R. 343, 344-45 (E.D. Penn. 1980) (finding gross mismanagement due to a failure to maintain adequate books and records and noting that "[o]riginal records were not available to substantiate entries and the condition of the books and records were such that they were not conducive to the performance of an audit in accordance with generally accepted auditing principles"); *In re Main Line Motors, Inc.*, 9 B.R. 782, 785 (Bankr. E.D. Penn. 1981) (finding appointment of a trustee was justified in part because the court was unconvinced "that the debtor's financial account practices have improved or will improve" and holding that "[t]he transmittal of more than $300,000 out of the debtor corporation, without interest, security, or a written instrument recording the debt, falls far short of any reasonable standard of business management"). *In re Philadelphia Athletic Club, Inc.*, 15 B.R. 60. 63 (Bankr. E.D. Penn. 1981) (citing the failure of a debtor to keep adequate books and records as a factor in appointing a trustee). *In re Humphreys Pest Control Franchises, Inc.*, 40 B.R. 174, 177 (E.D. Penn. 1984) (finding that the failure of a debtor-in-possession to keep

adequate books and records is grounds for appointment of a trustee and holding that where cash assets had been transferred to a parent corporation and "the books and records of the debtors [were] clearly inadequate with respect to the basis for the transfers," the appointment of a trustee was necessary). *In re Paolino*, 53 B.R. 399, 401 (Bankr. E.D. Penn. 1985) (finding that the failure of management "to keep accurate financial records prior to the filing of the petition" and the failure "to file adequate financial reports" was sufficient cause for the appointment of a trustee).

49.    The facts either in evidence, including the entire arrangement with TSE, or that will be introduced at trial show that Mr. Aman has breached his fiduciary duties to the Debtor's creditors because, in part, Mr. Aman acted to protect his interests as the Debtor's largest shareholder to the detriment of the Debtor's creditors. (*See* Original Trustee Motion, ¶ 66, citing legal analysis). The Secured Lenders are not aware of any of the Debtor's creditors that have confidence Mr. Aman will manage the Debtor during bankruptcy for their benefit. In fact, a majority of these creditors have joined in the Trustee Motion. (*See id.*, ¶ 67, citing legal analysis; *see* D.I. 34 (Consortium Joinder)). This is, of course, with the exception of TSE, who became a creditor of the Debtor on the eve of the Involuntary Petition Trial, and who is now Mr. Aman's employer and influences Mr. Aman's decision making with respect to the Debtor's management.

50.    In addition, the evidence is overwhelming that Mr. Aman has acted with intent to protect the assets of the Debtor from the Debtor's creditors, included the Secured Lenders, whom Mr. Aman accused of trying to take the Debtor's IP away from him.

51.    At the March 6 hearing, the Debtor's counsel stated that the Debtor had not taken any steps to consummate the plan outlined in Mr. Aman's February 6, 2013 letter. We now

know that the agreements Mr. Aman negotiated with TSE, whereby Mr. Aman eviscerated the Debtor's ability to develop and market its product, had already been either signed prior to the February 6 letter or were in furtherance of the plan outlined in the letter. Mr. Aman, in negotiating the TSE developer License Agreement, negotiated substantial benefit for himself personally, by ensuring that he controlled development of the IP and ensured he was paid by TSE for such efforts. The foregoing facts, combined with Mr. Aman's continuing relationship with TSE, his efforts to provide TSE with the Debtor's proprietary code, and assisting TSE with locating customers and obtaining the benefit of relationships that Mr. Aman originally intended for the Debtor, provide ample cause for appointment of a Chapter 11 trustee.

52. Alternatively, the foregoing facts show that appointment of a Chapter 11 trustee is in the best interests of creditors and the estate. (*See* Original Trustee Motion, ¶¶ 74-75, which contains summary of factors considered under Section 1104(a)(2), including trustworthiness of the Debtor's management, the Debtor's past and present potential to rehabilitate, and creditors' lack of confidence in current management). Also as discussed in the preceding sections, the Debtor did not, and does not, have a potential to rehabilitate, largely as a result of Mr. Aman's actions either as the Debtor's CEO or as the Debtor's controlling shareholder. (*See id.*).

53. For all of these reasons, in the event the Court declines to grant the Conversion Motion, cause exists under Section 1104(a)(1) to appoint a Chapter 11 trustee and/or it is in the best interests of creditors and the estate to appoint a Chapter 11 trustee under Section 1104(a)(2).

### Notice of Conversion Motion

Notice of the Conversion Motion has been given to (a) the Debtor, (b) the United States Trustee, and (3) all other parties that have appeared and/or requested service of pleadings in this case. The Secured Lenders will provide notice too all other creditors pursuant to L.B.R. 9014-3

4847-1743-3364\4

as soon as practicable after the Debtor files the creditor matrix.

WHEREFORE, the Secured Lenders request entry of an order granting the Conversion Motion or if the Court declines, granting the Trustee Motion, and granting such other and further relief as is just and proper.

Dated: June 3, 2013

**DORSEY & WHITNEY LLP**

  /s/ Eric Lopez Schnabel
Eric Lopez Schnabel, Esq. (PA Bar No. 84921)
Robert W. Mallard, Esq. (*pro hac vice*)
Jessica Mikhailevich (*pro hac vice*)
300 Delaware Avenue, Suite 1010
Wilmington, DE 19801
Telephone:  (302) 425-7171
Facsimile:  (302) 425-7177
E-mail:  schnabel.eric@dorsey.com
             mallard.robert@dorsey.com
             mikhailevich.jessica@dorsey.com

*Attorneys for the Secured Lenders*

4847-1743-3364\4